UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CHRISTOPHER LARSEN and SARAH
LARSEN,

                  Plaintiffs,

    -v-                        5:19-CV-897

SPEEDWAY LLC,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:              OF COUNSEL:

ALEXANDER & ASSOCIATES     JAMES L. ALEXANDER, ESQ.
Attorneys for Plaintiffs
6713 Collamer Road Suite 1
East Syracuse, New York 13057

SUGARMAN LAW FIRM LLP      BRITTANY LEE HANNAH, ESQ.
Attorneys for Defendant
211 West Jefferson Street
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

On July 24, 2019, defendant Speedway, LLC ("Speedway" or "defendant")

removed plaintiffs Christopher Larsen ("Christopher") and Sarah Larsen

("Sarah" and together "plaintiffs")'s state law complaint for negligence to this

district.   At bottom, Christopher claims that he slipped and fell outside

defendant's gas station and convenience store (the "store") due to defendant's

negligent care of its property.  For her part, Sarah brings a loss of consortium claim.

Between 12:41 and 12:45 p.m. on February 6, 2019, Christopher slipped and fell while walking across the driveway of a Speedway convenience store in Syracuse.[1]  Dkt. 36-11, Defendant's Statement of Material Facts ("DSMF"), ¶¶ 1, 3.  Christopher suffered a medial malleolus fracture extending into the tibia and a "proximal spiral fracture of the fibula," or a broken ankle and lower leg.  Dkt. 39-2, Plaintiffs' Statement of Material Facts ("PSMF"), ¶ 4.

Christopher has pointed to two contributing factors to his fall: (1) the uneven pavement in Speedway's driveway; and (2) icy conditions.  Dkt. 36-2 ("Pl. Dep."), p. 68.[2]  As to the pavement, plaintiffs rely on two pieces of the record to establish a defect.  First, Christopher testified that the pavement was "uneven" and generally a "whole mess of an area."  *Id.*

Second, plaintiffs rely on a pre-discovery answer to an interrogatory which claimed that "upon information and belief . . . [Speedway] was negligent in failing to maintain the driveway in sound condition and good repair; in failing to repair or replace the deteriorated tarvia; . . . [and] in failing to inspect the parking lot and driveway to determine the condition it was in."

---

[1] The facts for the present motion practice are taken from defendant's and plaintiffs' statements of material facts where admitted by the party opponent.  Disputed facts are flagged.

[2] Pagination corresponds with CM/ECF.

Dkt. 36-4, p. 4.  There are no pictures of uneven surfaces in the record[3] or expert reports detailing any failures to maintain defendant's parking lot.

By contrast, plaintiffs' showing that there was ice on Speedway's driveway on February 6, 2019 is more substantial.  According to plaintiffs' expert Wayne G. Mahar ("Mr. Mahar"), a forensic and broadcast meteorologist, the temperature at the store at the time of Christopher's fall was thirty-one degrees.  DSMF ¶¶ 6, 12.

Rain began to fall at the store sometime between 12:00 and 12:10 p.m. DSMF ¶ 13.  By 12:28 p.m., the rain was reaching the ground and freezing. *Id.* ¶ 14.  At 12:51 p.m., the storm had still not let up.  *Id.* ¶ 16.

Speedway posits that the rain was ongoing at the time that Christopher fell.  DSMF ¶ 17.  But according to plaintiffs, Mr. Mahar testified that the precipitation could have stopped for ten second intervals at around the time plaintiff fell, even if some rain was still falling.  Dkt. 39-2, Plaintiffs' Response to the DSMF ("DSMF Response"), ¶ 17.

Plaintiffs also point out that on February 1, 2019, there were six to ten inches of snow on Speedway's property.  PSMF ¶ 5(a).  But between February 3 and February 5, temperatures warmed to sixty-one degrees, which melted "nearly 100%" of the snow.  *Id.* at ¶ 5(b)-(c).  However, temperatures then

---

[3] One of defendant's employees took pictures of the area where Christopher fell, but neither party has made them available to the Court in advance of this motion.  Dkt. 36-6, pp. 10-11.

plummeted back below freezing on the morning of February 5, 2019.

*Id.* ¶ 5(c).  According to plaintiffs and Mr. Mahar, the snowmelt could have

refrozen between February 5 and February 6, 2019, causing a hazard that

predated the rainstorm.  *Id.* ¶¶ 5(d), 5(f).

In fact, James Young ("Young"), Speedway's employee, remembered seeing

"a little ice" that "probably refroze or something" near where Christopher fell.

Dkt. 36-7 ("Young Dep."), pp. 8, 19.

Despite plaintiffs' evidence of icy conditions, Speedway moved for

summary judgment under Federal Rule of Civil Procedure ("Rule") 56.

Dkt. 36.  Defendant claims that the storm in progress doctrine precludes

plaintiffs' recovery, because they will not be able to prove that defendant was

negligent in failing to address the icy conditions when the frozen rain causing

them was still ongoing at the time of Christopher's fall.

Plaintiffs retort that the storm in progress defense cannot apply because

there was already unaddressed ice on the premises before the rainstorm.

Plaintiffs also point out that their alternate theory of recovery, namely that

Speedway's uneven pavement caused Christopher's fall, is entirely

unperturbed by the storm in progress doctrine.

Oral argument on Speedway's motion was scheduled for Tuesday, October

5, 2021.  Dkt. 47.  But plaintiffs' counsel failed to appear.  Instead, the Court

entertained discussion of settlement with defendant's counsel in person and

plaintiff's counsel over the phone.  But that exercise proved similarly fruitless.  As a consequence, defendant's motion will now be considered on the parties' submissions.

Summary judgment under Rule 56 is warranted if the parties' submissions show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing FED. R. CIV. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The movant bears the burden of pointing the court to the materials that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Additionally, a court considering a summary judgment motion "must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).  Even so, a non-movant's conclusory allegations without support from record evidence are insufficient: the non-movant must "put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  At

5

bottom, summary judgment tasks the Court with assessing the assembled evidence and determining whether a reasonable factfinder could find in the nonmovant's favor. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

In short, the question is whether plaintiffs have presented a genuine dispute of material fact for their sole claim of negligence. "[T]o establish a prima facie case of negligence against a landowner where an alleged dangerous condition on the land causes an injury, the plaintiff must demonstrate that the landowner created the condition that caused the injury, or that the landowner had actual or constructive notice of the condition." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (citing *Taylor v. United States*, 121 F.3d 86, 89-90 (2d Cir. 1997)).

There are two methods of establishing constructive notice. First, a defendant is constructively put on notice if the defect is "visible and apparent" and existed "for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Johnson-Harris v. United States*, 2021 WL 4124725, at *3 (S.D.N.Y. Sept. 8, 2021) (citing *Gordon v. Am. Museum of Nat. Hist.*, 492 N.E.2d 774, 775 (N.Y. 1986)). Second, if the plaintiff submits "evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely

left unaddressed by the landlord," that, too will establish constructive notice. *Id.* (citing *Gonzalez*, 299 F. Supp. 2d at 193).

However, under the "storm in progress" exception to premises liability, "property owners may not be held liable for injuries occurring as the result of snow and ice on the property while a storm is in progress[.]" *Warboys v. SHI-III Briarcliff Reit, LLC*, 2021 WL 2003192, at *7 (S.D.N.Y. May 19, 2021).  In principle, the storm in progress defense allows a property owner a reasonable amount of time to clean any walkways after a snow or ice storm.  *Powell v. MLG Hillside Assocs., L.P.*, 737 N.Y.S.2d 27, 28 (Sup. Ct. App. Div. 1st Dep't 2002).

A plaintiff can overcome the storm in progress defense by proving that an accident "was caused by a slippery condition at the location where the plaintiff fell that existed prior to the storm, as opposed to precipitation from the storm in progress, and that the defendant had actual or constructive notice of the preexisting condition . . . ." *Meyers v. Big Six Towers, Inc.*, 925 N.Y.S.2d 607, 608 (Sup. Ct. App. Div. 2d Dep't 2011).

However, the plaintiff must prove not only that "ice in general" was present before the storm, but that "the specific icy condition he alleged was the cause of his fall" predated the storm.  *Alers v. La Bonne Vie Org.*, 863 N.Y.S.2d 750, 750 (Sup. Ct. App. Div. 2d Dep't 2008).

7

Plaintiffs raise four arguments to overcome Speedway's reliance on the storm in progress defense.  First, plaintiffs argue that Christopher fell in part because of uneven pavement—not solely because of icy conditions.  That argument must be rejected.  Plaintiffs' only evidence in support of any defect in the pavement is Christopher's testimony that it was "uneven" and a pre-discovery interrogatory with only plaintiffs' "information and belief" for support.  Pl. Dep. 68; Dkt. 36-4, p. 4.

That showing cannot be enough.  Again, summary judgment is the time to "put up or shut up." *Weinstock*, 224 F.3d at 41.  Plaintiffs' failure to even so much as provide pictures of the driveway at this late stage of the game speaks volumes.  No reasonable jury could credit that Christopher fell because of the uneven pavement without any testimony as to any particular defect that might have contributed to his fall, any sensation he might have felt of tripping on pavement, or some concrete evidence that the driveway posed a danger.  In the absence of any of those pillars of support, plaintiffs' first argument that this case should survive summary judgment must be rejected.

Second, plaintiffs argue that Mr. Mahar testified that it was possible that the rainstorm on February 6, 2019 could have stopped off and on, giving Speedway an opportunity to address any ice buildup.  That argument also fails.  Any lull in the storm must have been long enough to give Speedway "a

reasonable time in which to abate the slippery conditions." *Glover v. Botsford*, 971 N.Y.S.2d 771, 772 (Sup. Ct. App. Div. 4th Dep't 2013).  The ten seconds that Mr. Mahar has claimed the storm could have stopped are not nearly long enough to clear that threshold.  DSMF Response ¶ 17.  Plaintiffs' second argument must also be rejected.

Third, plaintiffs argue that it was negligent for Speedway not to anticipate icy conditions on February 6, 2019 by putting sand and salt down in case of an ice storm.  The Court is aware of no such requirement that a landlord anticipate hazardous conditions—instead, negligence in these cases is defined by failing to timely respond once a hazardous condition comes about. *Johnson-Harris*, 2021 WL 4124725, at *3 (noting that constructive notice attaches to defendant once reasonable amount of time passes to permit defendant to be aware of condition and remedy it).

The case that plaintiffs cite for the opposite conclusion does not convince the Court otherwise.  Plaintiffs' only citation is to *Waters v. Ciminelli Real Estate Corp.* 2015 WL 13216927, at *2 (Sup. Ct. Erie Cty. Nov. 20, 2015). That case stands for the rather unremarkable proposition that a weather report can put a defendant on notice that a hazardous condition may have formed on its property, and that it might need to timely check for that condition. *See id.*  That is not the case here, where Speedway claims that the storm was still ongoing when Christopher fell.

9

In fact, the only cases to the Court's knowledge which required a defendant to preemptively salt or sand an area involve a defendant being put on notice that a specific area would frequently pose a danger after winter storms. *See, e.g.*, *Merges v. Aramark Corp.*, 2012 WL 1113627, at *9 (W.D.N.Y. Mar. 30, 2012) (noting that where five accidents have occurred outside of same entrance with no accidents occurring outside of other entrances, defendant may have failed to alleviate or correct a known risk of which it had warning). Again, though, this case is not that one. There is no evidence that Speedway's driveway posed a recurring danger. Accordingly, plaintiffs' third argument must also be rejected.

Fourth and finally, plaintiffs argue that Christopher slipped not due to ice caused by the rainstorm, but from pre-existing ice from a refreeze earlier in the week. Mr. Mahar has provided evidence that there was a significant amount of snowmelt in the week preceding Christopher's fall, culminating in a return to below-freezing temperatures on February 5, 2019. PSMF ¶ 5.

Yet Speedway pushes back on this argument. According to defendant, it is not enough merely to point to the fact that other hazards existed before the storm: the plaintiff must prove that a pre-existing hazard actually caused his injury. *Alers*, 863 N.Y.S.2d at 750.

Plaintiffs have provided just enough evidence to present a jury question as to whether Christopher slipped on ice from a source other than the rainstorm.

Mr. Mahar's opinions and testimony establish the possibility that a thaw could have led to a refreeze on February 5, 2019.  PSMF ¶ 5.  And Young's testimony of a puddle that appeared to have "refrozen" ties that general possibility to the cause of Christopher's fall.  Young Dep. 19.

Putting those facts together, a reasonable jury could conclude that Speedway was constructively on notice of ice in its driveway caused by thawing and refreezing, and that the freezing rain played no part in Christopher's fall.

Taking these facts together and reading them in the light most favorable to plaintiffs, a reasonable jury could conclude that the thaw from February 1-3 created a puddle that in Young's words "refroze" on February 5, 2019.  PSMF ¶ 5.  The jury could then find that that ice persisted untended for at least several hours, affording Speedway constructive notice that there was an ice hazard on its driveway.  The jury could finally conclude that Christopher slipped on the refrozen puddle, not on ice from the rainstorm.  Young Dep. 19.  Putting that all together, a reasonable factfinder could determine that defendant was liable for Christopher's fall regardless of the storm in progress defense.  Defendant's motion for summary judgment must therefore be denied, but only on the limited basis of plaintiffs' theory that Christopher slipped and fell on preexisting ice of which defendant had constructive notice.

Therefore, it is

ORDERED that

1.  Defendant Speedway LLC's motion for summary judgment is DENIED;

2.  A jury trial for this matter is set for Monday, January 24, 2022 with jury selection beginning at 9:30 a.m.;

3.  Plaintiffs' claim shall proceed only on the limited theory that plaintiff Christopher Larsen slipped on ice that existed before the freezing rainstorm and that defendants had time to remedy that ice but allegedly failed to do so;

4.  All other theories of recovery for plaintiffs' claim of negligence are dismissed as unsupported by the record evidence;

5.  A pretrial conference is scheduled for Tuesday, January 11, 2022, at 2 p.m.;

6.  All pretrial submissions shall be filed on or before Tuesday, January 4, 2022;

7.  Responses in opposition to any motions in limine shall be filed on or before Wednesday, January 19, 2022; and

8.  All proceedings will be at the United States Courthouse, 10 Broad Street, Utica, New York, 13501.

IT IS SO ORDERED.

Dated:  October 5, 2021
       Utica, New York.

David N. Hurd
U.S. District Judge